| 2DALEY, Judge.
The plaintiff was injured when she slipped and fell in a puddle of milk in the defendant’s store. The plaintiff has appealed the judge’s ruling that the defendant was not liable for the accident. For the reasons which follow, we affirm.
*252 FACTS:
The plaintiff, Nancy Chase, testified that she went to the Sav-A-Center Food Store (Sav-A-Center) on Veterans Boulevard on March 10, 1997 to buy a half gallon of ice cream. Her son drove her to the store and waited in the car while she shopped. She testified that she entered the store, got the ice cream, then got in line to check out at register seven or eight. Mrs. Chase testified that there were a-number of people in line ahead of her and she waited in line about ten minutes. She explained that an announcement came over the intercom stating that register two was open with no one in line. Mrs. Chase testified that she saw people heading toward register two, so she ^proceeded in that direction. Mrs. Chase testified that when she was in the vicinity of register four she slipped on the floor, landing on her hands and knees. She was helped up by two gentlemen and noted that her clothing was wet. Mrs. Chase proceeded to check out and returned to her car. Upon entering the car, she related these events to her son. They proceeded home.
Mrs. Chase testified that when she returned home, her knees were hurting and her hands were stinging. She told her husband what happened and he suggested she call the store to report the accident. Mrs. Chase testified that when she called the store that night, she was told to come in the next,morning when the manager would be present to make a report. She returned to the store the next morning where a report was filled out.
Mrs. Chase sought medical attention for her injuries, which included arthroscopic surgery to her left knee. At the time of trial, she continued to experience pain and swelling in the left knee and had to curtail many activities due to the condition of her knee.
On cross-examination, Mrs. Chase testified that she never saw the milk on the floor and was unaware of how the milk got on the floor. She denied having heard an announcement to clean up a spill. Mrs. Chase testified that neither of the gentlemen who helped her up were store managers.
The testimony of Mrs. Chase’s son, Steven, and her husband, John, corroborated Mrs. Chase’s testimony.
Corey Boudreaux testified that he was the night stock crew supervisor at the time of this incident. Mr. Boudreaux testified that he was in the customer service desk with the assistant manager, Raymond Cano, when they heard a gallon of milk hit the floor. He testified that the milk spill was near registers two and three, but he |4did not know the size of the area of the spill. Mr. Boudreaux testified that an announcement was made over the loudspeaker that a spill needed to be cleaned. He testified that this took less than one minute. At that point, the assistant manager, Mr. Cano, told the cashier that she needed to close the register where the milk spilled and another cashier opened a new register. The cashier verbally announced that another checkout aisle was being opened.
Mr. Boudreaux testified that as the cashier made the announcement to clean up the spill, he and Mr. Cano were walking from the service desk to the area of the spill. Mr. Boudreaux testified that there were about eight people standing out of the way of the spill as he saw plaintiff approaching. He testified that he and Mr. Cano saw her walking toward the spill and “tried to warn her but it was too late.” Mr. Boudreaux testified that he thought Mrs. Chase would have seen the spill.
Mr. Boudreaux was unfamiliar with the “Wet Floor” sign policy at Sav-A-Center. He testified that the procedure for a spill was to announce that clean up was needed *253 and guard the spill until it is cleared. He explained that “guard the spill” means to stand there until the area is cleaned.
Mr. Boudreaux was questioned extensively by both sides regarding the-length of time between the time the milk was spilled and the time of the fall. He explained that it could have been less than a minute or more than a minute. He did specifically state that the sequence of events was the spill, the announcement for clean up, and the announcement of a new register-being opened.
Mr. Raymond Cano, the assistant manager of the store, testified that he saw the plaintiff walking through the store very quickly prior to the spill. Mr. Boudreaux informed Mr. Cano of the spill. Mr. Cano testified that he |ssaw plaintiff on the ground between registers three and four and that she had hit her head. He testified that he and Mr. Boudreaux helped plaintiff up, noting her forehead was red. Mr. Cano estimated that he arrived at the spill within two and a half to three seconds from the time of the spill, and then estimated that the time between the spill and the fall was four seconds.
Mr. Cano stated that he asked plaintiff for her name, but she declined to give him any information because she was “in a hurry.” He explained that plaintiff returned to the store later that night to report the accident. Mr. Cano testified that he wrote a note regarding the accident and gave it to the store director the next morning.
Phyllis Chauvin testified that she was the front end assistant manager for the store at the time of plaintiffs fall. Ms. Chauvin stated that she was checking out a customer on register three when a man dropped a gallon of milk which “splattered everywhere.” Although she could not see the floor, she saw “splatter spots everywhere” and she called for a cleanup immediately. Ms. Chauvin estimated it took three seconds for Mr. Boudreaux and Mr. Cano to come to the area after she called for a cleanup and that they were there when she hung up the phone. Ms. Chau-vin testified that she did not see plaintiff fall, nor did she recall speaking to plaintiff after the fall. Ms. Chauvin testified that she did not close her register because of the spill and that no other register opened up after the spill. She believes Mrs. Chase checked out at her register after she fell.
In ruling in favor of defendant, the trial judge stated that he believed plaintiff fell and was injured at defendant’s store, however plaintiff did not prove by a preponderance of the evidence that the defendant was liable.
| ¿DISCUSSION:
On appeal, plaintiff argues the trial court erred in finding she failed to carry her burden of proof. Citing the testimony of Mr. Boudreaux, plaintiff claims there was ample time to warn Mrs. Chase of the danger. At trial,'Mr. Boudreaux initially testified that between the time he heard the milk spill and the time an announcement was made that a new register was being opened approximately one and a half minutes elapsed. On cross examination, he testified that he did not know the time frame between the milk hitting the floor and the time of the fall. On redirect he admitted that he did not know the timing of the events, but he did know that the spill occurred, there was a call to clean up, and then a new register was opened.
LSA-R.S. 9:2800.6 sets forth the burden of proof for a claim against a merchant. This statute provides that the claimant has the burden of proving that (1) the condition presented an unreasonable risk of harm, (2) the merchant had .notice of the condition prior to the occurrence, and (3) *254 the merchant did not exercise reasonable care.
Mr. Boudreaux and Mr. Cano both testified that they proceeded to the area of the spill immediately after the spill occurred. A close reading of their testimony indicates that they were walking toward the area of the spill at the time the fall occurred. Plaintiff urges that we dismiss the testimony of Mr. Cano in its entirety because he states that the plaintiff hit her head in the fall and returned to the store later on the night of the fall to make a report and that this testimony is at odds with the testimony of other witnesses who established that plaintiff did not strike her head in the fall and that she returned to the store the next morning to make a report. Plaintiff interprets the testimony to state that Mr. Boudreaux was standing in the area of the spill at the time of plaintiffs fall. A closer reading of the testimony of Mr. |7Cano, Mr. Boudreaux, Ms. Chauvin, and Mrs. Chase reveals that each witness had a different recollection of the event surrounding the spilled milk and resulting fall by Mrs. Chase. Ms. Chauvin saw and heard the milk spill and immediately called for a clean up. The call for a clean up is supported by both Mr. Cano and Mr. Boudreaux’s testimony as they hearing the call immediately proceeded to register three. Mr. Boudreaux recalls he and Mr. Cano were walking towards the spill, within less than one minute of the spill, when Mrs. Chase fell before any store employee had an opportunity to warn her. Mr. Cano recalls Mrs. Chase quickly walking through the store prior to the spill and falling in the spilled milk before he could warn her. Whether the store employees had sufficient time to warn Mrs. Chase of the danger of the spilt milk is a factual question. The factual scenario recounted by Mrs. Chase suggests that the store management directed her towards the spill by announcing that another register was open without first having the milk spill cleaned up or at least providing adequate warning of the spill. While Mr. Boudreaux’s testimony somewhat supports this theory of liability, the testimony of Mr. Cano and Mrs. Chauvin do not. Both Ms. Chauvin and Mr. Cano testified that no new register was opened. Given that the factual testimony is divergent the trial court had to determine as best he could how the accident happened. Given the varied factual testimony we can. not say that the trial court erred when he conclude that Mr. Boudreaux, Mr. Cano, and Ms. Chauvin all exercised reasonable care under the circumstances.
Plaintiff also contends that a written store policy required that a yellow “Caution Wet Floor” pylon, which was located at the service desk, be placed at the site of the spill. Given the varied testimony, the trial court could have concluded that the testimony established that there was no time to place a pylon at the area because Mr. Boudreaux and Mr. Cano were on their way to the spill at the time of the fall. | sThus, even if Mr. Boudreaux had been aware of this policy, he was walking toward the spill at the time of the fall and would not have had time to place the pylon.
While we are sympathetic to plaintiff, Nancy Chase, and the painful injury that she suffered, and may have decided this case differently if we were called upon to be fact finders, we find the trial judge’s ruling is supported by the record. Accordingly, the judgment of the trial judge is affirmed.

AFFIRMED.